UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ARTHUR HAROLD AUSBURN                                              PLAINTIFF

V.                          No. 4:21-CV-1145-BRW-JTR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                     DEFENDANT

**RECOMMENDED DISPOSITION**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I. Introduction

On January 30, 2020, Arthur Harold Ausburn ("Ausburn") filed a Title II application for a period of disability and disability insurance benefits. (Tr. at 11). In the application, she alleged disability beginning on June 1, 2019. *Id*. In a written decision dated June 3, 2021, an administrative law judge ("ALJ") denied the

application. (Tr. at 11–23). The Appeals Council denied Ausburn's request for review on June 3, 2021. (Tr. at 1-4). The ALJ's decision now stands as the final decision of the Commissioner, and Ausburn has requested judicial review.

For the reasons stated below, the Court concludes that the Commissioner's decision should be affirmed.

## II. The ALJ's Decision

At Step One of the required five-step analysis, the ALJ found that Ausburn had not engaged in substantial gainful activity since June 1, 2019.[1] (Tr. at 13). At Step Two, the ALJ determined that Ausburn has the following severe impairments: (1) degenerative disc disease and scoliosis of the lumbar spine; (2) retinal edema and vitelliform foveomacular dystrophy of the right eye;[2] (3) post-traumatic stress disorder; (4) anti-social personality disorder; and (5) polysubstance abuse disorder. *Id*.

At step three, the ALJ determined that Ausburn's impairments did not meet or equal a listed impairment (Tr. at 14–16).[3]

---

[1] 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

[2] Adult-onset foveomacular vitelliform dystrophy goes by a few different names, but its "egg yolk" presentation remains a consistent finding in affected eyes. Depending on the disease stage, most patients have few symptoms and only mild visual impairment. https://www.reviewofophthalmology.com/article/sunny-side-up-vitelliform-dystrophy

[3] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

The ALJ determined that Ausburn had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional limitations; (1) he could no more than occasionally climb, stoop, kneel, crouch, and crawl; (2) he is limited to reading ordinary newspaper or book print, but no fine print; (3) he is limited to simple routine, repetitive work, making simple work-related decisions; and (4) he can have occasional interaction with supervisors, co-workers, and the public. (Tr. at 16–17).

At Step Four, the ALJ found that Ausburn was unable to perform any of his past relevant work. (Tr. at 21). At Step Five, the ALJ relied upon Vocational Expert ("VE") testimony to find that, based on Ausburn's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform, including positions such as router, assembler, and bakery worker. (Tr. at 22). Thus, the ALJ concluded that Ausburn was not disabled. *Id*.

### III. Discussion

A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable

mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

    B.   Ausburn's Arguments on Appeal

Ausburn contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. He argues that the ALJ erred at Step Five by failing to recognize and resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT").

4

Ausburn's claim relates to his right eye condition, and the Court limits its discussion to that impairment.[4]

Ausburn was diagnosed with retinal edema and vitelliform foveomacular dystrophy of the right eye. (Tr. at 302, 397–398). Ausburn received intravitreal injections and used Refresh eye drops. (Tr. at 289–306). The record reflects that his left eye vision is 20/20, while his right eye vision is 20/40. (Tr. at 456). Ausburn wears prescription glasses (Tr. at 39). After his final intravitreal injection in February 2021, he was told simply to follow-up in six weeks. (Tr. at 500–504).

Ausburn said that he could not read out of his right eye, but he admitted to using his phone when he checked his Facebook account. (Tr. at 42–43). No doctor placed visual functional restrictions on Ausburn. He did not require aggressive treatment.

The Disability Determination Services ("DDS") medical experts reviewed the records and found that Ausburn had no visual limitations. (Tr. at 66, 80). The ALJ considered the DDS opinions and decided that Ausburn did have some visual limitation. In the RFC, the ALJ limited Ausburn to reading ordinary newspaper or

---

[4] See *Noerper v. Saul*, 964 F.3d 738, 741 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered the claimant's arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.")

book print, but not fine print. (Tr. at 55). Ausburn argues that the ALJ 's limitation would have ruled out the jobs which the VE identified.[5]

Ausburn correctly states that the DOT's companion reference guide states that the jobs identified require either frequent or occasional Near Acuity, and occasional Accommodation.[6] Ausburn says that the ALJ should have limited him in these specific DOT-SCO terms, and posed a hypothetical with those terms to the VE.[7] The record does not suggest that further RFC limitations were required, or that the requirements of the jobs identified outstripped Ausburn's abilities. Treatment was conservative and Ausburn's condition did not deteriorate. The hypothetical to the

---

[5] Before relying on VE evidence to support a determination that a claimant is not disabled, the ALJ has an affirmative responsibility to ask about "any possible conflict" between VE testimony and the DOT, and to obtain an explanation for any such conflict. *Renfrow v. Colvin*, 496 F.3d 918, 920-21 (8th Cir. 2007).

[6] The companion publication to the DOT, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), is relied on by Administration arbiters and the Courts to determine what each occupation requires. The SCO defines Near Acuity as clarity of vision at 20 inches or less. SCO, subpt C-4. Accommodation is defined as "adjustment of the lens of the eye to bring an object into sharp focus." *Id.* Near Acuity does not appear to conflict with the RFC for reading ordinary or book print, but no fine print: neither the ALJ nor the VE thought it did, and the Court concurs. And Ausburn wears glasses as Accommodation.

[7] The Commissioner may meet his burden at Step Five by eliciting testimony by a VE in response to "a properly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies*." Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997). Any alleged impairments properly rejected by an ALJ as untrue or unsubstantiated need not be included in a hypothetical question. *Johnson v. Apfel,* 240 F.3d 1145, 1148 (8th Cir. 2001). VE testimony constitutes substantial evidence when it is in response to a hypothetical that captures all the concrete consequences of a claimant's impairments. *Buckner v. Astrue*, 646 F.3d 549, 561 (8th Cir. 2011).

VE, and the corresponding RFC, properly considered only the credible limitations borne out by the record.

Further, there is no requirement that the ALJ's assigned RFC directly track DOT language. The case to which Ausburn cites only says that using non-DOT language runs the risk for remand for clarification. *Gilbert v. Berryhill*, No. 3:18-CV-198-PSH, at *7–8 (E.D. Ark. July 29, 2019). But Ausburn cites to no case that requires an ALJ to use exact DOT language in the RFC. In a recent case from this Court, in which the plaintiff urged the Court to require that the ALJ use exact DOT language in the RFC, Magistrate Judge Jerome Kearney stated that the ALJ was not required to do so. *Clapp v. Saul*, No. 3:19-CV-61-JTK (E.D. Ark. April 24, 2020), *Doc. Nos. 12, 14, 17*; see also *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (RFC is ultimately an administrative decision reserved to the Commissioner).

Moreover, the record has not proven that Ausburn needs more visual limitation than what the RFC prescribed. Ausburn tries to use his layperson's vantage point to define the skills in each job, concluding that he could not perform them. This, however, is just what a VE is for: to identify and classify the DOT occupations, and to determine whether the proposed claimant can perform the work.[8] The ALJ properly relied on such testimony.

---

[8] The Eighth Circuit has repeatedly recognized that DOT definitions are "simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010). Not all of the jobs in every

## IV. Conclusion

There is substantial evidence to support the Commissioner's decision that Ausburn was not disabled. The ALJ did not err at Step Five.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that judgment be entered for the Defendant.

DATED this 31st day of October, 2022.

                                                      */s/ J. Thomas Ray*
                                                 UNITED STATES MAGISTRATE JUDGE

---

category have requirements identical to or as rigorous as those listed in the DOT. *See Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000).